## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## EASTERN DIVISION

SHENZHEN JI'AN HEALTH TECHNOLOGY
CO., LTD.,

               Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

               Defendants.

Civil Action No. 25-cv-457

## <u>COMPLAINT</u>

Plaintiff, Shenzhen Ji'an Health Technology Co., Ltd. ("Plaintiff" or "Shenzhen"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Defendants, through online commerce platforms including without limitation Amazon.com, Walmart.com, and Temu.com (collectively, the "Seller IDs"), have infringed, and continue to infringe, on Plaintiff's United States Patent No. D1,050,475 (the "Asserted Patent" or "Plaintiff's Patented Design") by manufacturing, distributing, importing, offering for sale, and/or selling encapsulated the Patented Design in violation of 35 U.S.C. § 271 (the "Infringing Products"). Plaintiff is forced to file this action to combat Defendants' infringement of its Patented Design, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Patented Design and, therefore, Plaintiff seeks

1

injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiff is a Chinese limited company that owns the Patented Design asserted in this case, which is registered with the United States Patent and Trademark Office. A copy of the Asserted Patent is attached as **Exhibit 1**.

2.      On November 5, 2024, the United States Patent and Trademark Office duly and legally issues United States Patent No. D1,050,475, entitled "MASSAGER" to Shenzhen.

3.      Plaintiff is the named assignee of, owns all right, title and interest in, and has standing to sue for infringement of United States Patent No. D1,050,475.

4.      After obtaining the registration for the Patented Design, Shenzhen conducted an internet inquiry and discovered that the Defendants were selling products that embodied the Patented Design, despite having no license or authorization from Plaintiff.

5.      Defendants' Infringing Products are cheaply produced and inferior to Plaintiff's licensed products. The Infringing Products threaten to destroy Plaintiff's reputation and goodwill and cause significant harm to Plaintiff's business, for which there is no adequate remedy because licensing and sales of its products is at the core of Shenzhen's business.

6.      On information and belief, Defendants' infringing activities of offering for sale and selling Infringing Products arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or

sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

7.    Plaintiff therefore brings this action for federal patent infringement pursuant to 35 U.S.C. § 271, et seq.

## JURISDICTION AND VENUE

8.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a), 1331.

9.    This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive

substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

    a.  Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites, like Amazon.com, Walmart.com, and Temu.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b.  Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c.  Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d.  Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

e.  Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Infringing Products.

f.  Upon information and belief, Defendants are employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of

queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's design and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g. Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

h. Upon information and belief, many Defendants likely reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax trademark, copyright, and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

i. Upon information and belief, Defendants are aware of Plaintiff's Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

9.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of

their infringing goods through the Seller IDs, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff Shenzhen Ji'an Health Technology Co., Ltd.

10.     Plaintiff is a Chinese limited company based in China that owns the design patent asserted in this action, which is registered with the United States Patent and Trademark Office.

11.     Plaintiff manufactures and sells products through its own online webstores and licenses use of the Asserted Patent to a limited number of manufacturers of health and wellness devises that are sold online and in retail shops around the world (collectively, the "Plaintiff's Products").

12.     Among the exclusive rights granted to Plaintiff under the Patent Act are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods encapsulated by Plaintiff's Patented Design.

13.     Plaintiff plans to expand the manufacturing and sales of products embodying its patented designs, including the Patented Design asserted in this case. Plaintiff also licenses its patent to other manufacturers who will be using the design on various products.

14.     Plaintiff's Products are known for their distinctive patented designs. These designs are broadly recognized by consumers and are highly sought after health and wellness products. Products styled after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff's Products. Plaintiff uses these designs in connection with its Products, including, but not limited to, the designs shown in the below table and in Exhibit 1. Plaintiff's Products, including those which embody the Plaintiff's Patented Design, are marked in compliance with 35 U.S.C. § 287(a).

| Patent Number | Claim | | Issue Date |
|---|---|---|---|
| D1,050,475 |  FIG. 1  FIG. 5 | | Nov, 5, 2024 |

15.    Plaintiff has spent substantial time and money advertising its goods and plans to continue expanding its advertising and promotion of genuine goods embodying the Patented Design by authorized distributors and third parties via the Internet. Over the past several years, visibility on the Internet, particularly via e-commerce platforms such as Amazon, eBay, TikTok, Temu, Wish, and Walmart, and others, ("Third Party Platforms"), has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors will be

expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's products. Similarly, Defendants' individual Seller IDs are indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

16.     Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller IDs in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants conduct business or assist in business conducted throughout the United States (including within the State of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that embody infringing versions of Plaintiff's Patented Design. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Pennsylvania and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate infringing versions of Plaintiff's Patented Design.

17.     The Seller IDs share unique identifiers establishing a logical relationship between them and reflecting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their sophisticated illegal operation, including changing the names of their stores multiple times,

opening new stores, helping their friends open stores, and making subtle changes to their products and listings.

18.     On information and belief, Defendants create their online Seller IDs and advertise what appear to be genuine versions of Plaintiff's patented products, without any permission or license from Plaintiff.

19.     Defendants appear to be an interrelated group of infringers, who create the Seller IDs on various third-party online platforms and design these stores to appear to sell genuine versions of Plaintiff's Products, while they actually sell inferior infringing imitations of Plaintiff's Products. The Seller IDs share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence. These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which they are required to present as part of their defense, Plaintiff will amend the Complaint accordingly.

## DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of online sales of products to the United States has resulted in significant infringement of Plaintiff's Patented Design. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps. Plaintiff has

identified hundreds of fully interactive e-commerce stores, including the Seller IDs, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. These Infringing Products are massagers that closely mimic the design patented by Plaintiff, including the same overall shape, dimensions, and aesthetic features. Specifically, the infringing products have an elongated handle for ease of use, with a similar massaging head functionality as described in Plaintiff's patent. Based on Plaintiff's investigation, Defendants have sold countless varying types of these Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

21.    Defendants operate at least the Seller IDs identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of goods embodying Plaintiff's Patented Design and/or substantially similar thereto.

22.    Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not. The Infringing Products are massagers that infringe Plaintiff's Patented Design including the elongated curved body, which precisely matches the patented shape with its specific curvature and dimensionality, the head configuration, which directly copies the unique massage system as described in the patent drawings, the overall aesthetic features, including the exact proportional relationships and surface contours that distinguish the original design. *See* **Exhibit 1**. Images of the Seller IDs' Infringing Products demonstrate a verbatim reproduction of these specific patented design elements, causing consumer confusion and market harm. To illustrate, below are several examples using three of the Seller IDs included in Schedule A attached

hereto (BIBIRE, Lejing e-commerce, AUBEPINE) which show that the Infringing Products embody Plaintiff's Patented Design:



| Plaintiff's Patented Design | Infringing Listing |
|---|---|
| | Seller ID: BIBIRE |
| | Seller ID: Lejing e-commerce |

| Plaintiff's Patented Design | Infringing Listing |
|---|---|
|  | |

Seller ID: AUBEPINE

23.    Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as **Exhibit 2.**

24.    Defendants' unauthorized reproduction, distribution, and public display of products embodying Plaintiff's Patented Design is irreparably harming Plaintiff and its business.

25.    According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* **Exhibit 3** at 2). Internet websites like the Seller IDs are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* **Exhibit 4** at 8).

26.    E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers

to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple Seller IDs in attempts to avoid detection.

27.     As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Seller IDs so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Online internet stores like the Seller IDs appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Online internet stores like the Seller IDs often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized any of the Defendants to manufacture, distribute, import, offer for sale, and/or sell goods embodying Plaintiff's Patented Design, and none of the Defendants are authorized to sell Plaintiff's Products.

28.     Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller IDs by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

29.     Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on e-commerce platforms such as Amazon, Temu, Walmart, and other Third Party Platforms. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

**The Scope of Defendants' Infringing Activities**

30.     Upon information and belief, each Defendant operates more than one merchant storefront.

31.     Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

32.     Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

33.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $100,000.

34.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $300,000.

35.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $2,000,000.

## JOINDER OF DEFENDANTS

36.     As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller IDs often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images. The Infringing Products offered for sale by unauthorized retailers such as the Seller IDs often bear irregularities and indicia of being unauthorized that are similar to

one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

37.    On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. *See* **Exhibit 5**. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants will attempt to settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

38.    Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants appear to be an interrelated group of infringers, who create numerous Seller IDs and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products. The Seller IDs share unique identifiers, such as the following: common design elements, the same or similar infringing products that they

offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced infringing products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

39.     These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D1,050,475
## (35 U.S.C. § 271(a))

48.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.     Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's Patent.

50.     In the eye of an ordinary observer, the design of Defendants' Infringing Products and the designs claimed in the Plaintiff patent are substantially the same. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff.

51.     The mechanism of infringement is demonstrated through direct visual reproduction of the Patented Design's unique structural elements. Defendants are engaged in unauthorized manufacturing of products using identical design specifications, marketing and selling products

that are substantially indistinguishable from the Patented Design, thereby exploiting the distinctive ornamental characteristics protected by the Asserted Patent. The infringement mechanism specifically involves copying the exact elongated handle configuration, replicating the precise head placement and massage system, and reproducing the distinctive aesthetic and functional design elements without authorization.

52.     Defendants' Infringing Products misappropriate the novelty of the designs claimed in the Plaintiff patent that distinguished Plaintiff's patented designs from the prior art.

53.     Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental designs claimed in the Plaintiff patent. No licensing agreements exist between Plaintiff and Defendants regarding the patent at issue. Defendants have infringed the Plaintiff patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

54.     Defendants have had constructive notice of Plaintiff's rights in the Patent because the Patent is marked on products embodying the patented design and/or their packaging with the patent number in accordance with 35 U.S.C. § 287.

55.     Defendants' infringement of the Patent has been willful.

56.     Defendants' infringement of Patent has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Patent.

57.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

58.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

59.    Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount found or assessed, due to Defendants' willful infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, directing as follows:

(1)    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following activities, as Plaintiff has demonstrated (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction:

(a)    making, using, importing, offering for sale, and selling any product not authorized by Plaintiff that includes any reproduction, copy, or imitation of the designs claimed in the Patented Design, or inducing others to do the same;

(b)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(c)    aiding abetting, contributing to, or otherwise assisting anyone in infringing the Patented Design.

(2)    Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or imitation of Plaintiff's Patented Design.

19

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

      (a)    Locate all accounts connected to Defendants;

      (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

      (a)    Locate all accounts connected to Defendants;

      (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5)    Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's Patented Design, including but not limited to lost profits and/or a reasonable royalty, and awarding Plaintiff all of the profits

realized by Defendants, or others acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of the Patented Design, in accordance with 35 U.S.C. § 284, together with prejudgment and post-judgment interest;

(6)    Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Patented Design as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7)    Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

(8)    Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: April 2, 2025                          Respectfully submitted,

                                             By: /s/ Michael Mitchell
                                             Michael Mitchell IL #6324363
                                             Shengmao (Sam) Mu NY #5707021
                                             Abby Neu IL #6327370
                                             Keaton Smith IL #6347736
                                             **WHITEWOOD LAW PLLC**
                                             57 West 57th Street, 3rd and 4th Floors
                                             New York, NY 10019
                                             Telephone: (917) 858-8018
                                             Email: mmitchell@whitewoodlaw.com

                                             *Counsel for Plaintiff*

# Schedule A

| DOE # | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 1 | TOPKIDON | Amazon | A2CCBPES59LUPD |
| 2 | amemonai | Amazon | A246OIBTBOMW5P |
| 3 | BIBIRE | Amazon | A31JGIL4FIX8N6 |
| 4 | —BOLINA | Amazon | A2GFFGFJB6XCQF |
| 5 | Cutesliving | Amazon | A1VMJ63PHAXW5P |
| 6 | Deestop | Amazon | A2OLUTWO0THEHK |
| 7 | Geometric matrix | Amazon | A1K6KQIBQSPRGQ |
| 8 | guangzhouyanchushangmaoyouxiangongsi | Amazon | A3F4MHGWEBFY8F |
| 9 | Gude Health | Amazon | A33V5YKCSNM7NG |
| 10 | Harbor No.1 | Amazon | AJYVZBIMATAYZ |
| 11 | hiluce electric | Amazon | A1UU3XJZRWCNQA |
| 12 | Holy Power Light | Amazon | ABKQNVC3Z7513 |
| 13 | INKEER-US Online | Amazon | ASAD0UKXZH8ZJ |
| 14 | JONSOO | Amazon | A32ZDQMNG44VMS |
| 15 | KOCASO | Amazon | A16M88MDT2GE4P |
| 16 | LBEIJ | Amazon | AGDSP3D4P7ZVU |
| 17 | LETINE | Amazon | AFVYA2ZPLCID3 |
| 18 | Luckysite | Amazon | ACXANEVZGKDCA |
| 19 | LUOOV Mart | Amazon | A2U1UHKKBQ0END |
| 20 | MAGNISH, Inc | Amazon | AXZJU5D8NXEM2 |
| 21 | MUIEFE DIRECT | Amazon | A1TDMY6HXYPZ3D |
| 22 | Paivanwoo | Amazon | A19IGWBRHB9BZA |
| 23 | Phenitech | Amazon | AQZGMVFMFSQ4T |
| 24 | QINCHUNLI Fitness | Amazon | AGZQWGRW0RJAM |
| 25 | The Earth'sEco Deal | Amazon | AQX5MHSH4YKIL |
| 26 | Werdribo | Amazon | AIKIO7JROO1IJ |
| 27 | xinxinwangpu | Amazon | A1172WRTILBUQ9 |
| 28 | YingXianShengTengKeJiYouXianGongSi | Amazon | A2P9CHWRNJ7WVT |
| 29 | yumushangmaoyouxiangonsi | Amazon | AK4J80I626J3N |
| 30 | ZCJHee | Amazon | A18BEYK5CQGCXN |
| 31 | 21ST ESSENTIALS | Amazon | AVGNZIMCZL8F6 |
| 32 | Hulugo Co., Ltd. | Walmart | 101639676 |
| 33 | Lejing e-commerce | Walmart | 102491102 |
| 34 | lkristin Official | Walmart | 101186723 |
| 35 | Anhang | Temu | 634418219812645 |
| 36 | AUBEPINE | Temu | 635517727794141 |
| 37 | BBBBBBW | Temu | 634418216081876 |
| 38 | C451262'shop | Temu | 635517732594362 |
| 39 | CCCCCCW | Temu | 634418216082015 |

| DOE # | Seller Name | Platform | Seller ID |
|---|---|---|---|
| 40 | DOYUDOG | Temu | 634418218770634 |
| 41 | En Appliances | Temu | 634418215891564 |
| 42 | GOOD STATE | Temu | 634418220073332 |
| 43 | Gude Healthy | Temu | 634418214662387 |
| 44 | Gude jiankang | Temu | 634418219364298 |
| 45 | Hengxuan Health | Temu | 634418215255797 |
| 46 | Huangrong electronic | Temu | 634418218401095 |
| 47 | Huaxia Personal care | Temu | 634418218124669 |
| 48 | jiangjunSP | Temu | 634418219769100 |
| 49 | Jueyue | Temu | 634418216788548 |
| 50 | Lanzhi Hairdressing local | Temu | 634418219369276 |
| 51 | Mainland trade | Temu | 634418219718814 |
| 52 | MASSTECK | Temu | 634418214677086 |
| 53 | Mawiyer Newone | Temu | 634418216674418 |
| 54 | MAXSPEED | Temu | 634418215956474 |
| 55 | MMDZ | Temu | 634418216716932 |
| 56 | Original Industry | Temu | 634418215450428 |
| 57 | Shop Ease A | Temu | 634418216548018 |
| 58 | SHUYI ELECTRICAL | Temu | 57146252721 |
| 59 | Sky Homes | Temu | 634418219888460 |
| 60 | Smart Pick Shop | Temu | 634418219329354 |
| 61 | SwayStyle | Temu | 634418217001772 |
| 62 | WIDIS Healthy Life local | Temu | 634418215306691 |